T.C. Memo. 2011-8

UNITED STATES TAX COURT

SUZANNE BLAND, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 868-09.                    Filed January 11, 2011.

P filed joint Federal income tax returns with her
husband H for the 2000 and 2002 taxable years.
Following H's death, P seeks relief from joint and
several liability under sec. 6015(f), I.R.C., with
respect to the 2000 and 2002 tax liabilities.

<u>Held</u>:  P is not entitled to relief from joint and
several liability pursuant to sec. 6015(f), I.R.C.,
with respect to her 2000 and 2002 taxable years.

Suzanne Bland, pro se.

<u>Sarah A. Herson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case arises from a petition for judicial review of respondent's determination denying relief from joint and several liability under section 6015 for the taxable years 2000 and 2002.[1]  The issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(f) for the taxable years 2000 and 2002.

### FINDINGS OF FACT

The parties have stipulated some of the facts.  The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  At the time she filed her petition, petitioner resided in California.

During the taxable years at issue petitioner was married to Matthew D. Bland (Mr. Bland).  Petitioner and Mr. Bland signed and timely filed a joint Form 1040, U.S. Individual Income Tax Return (joint income tax return), for each of the 2000 and 2002 tax years.

On the 2000 joint income tax return, petitioner and Mr. Bland reported a tax liabilty of $9,972, withholding credits of $8,074, and a total tax due of $1,898.  However, no payments

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. The parties have stipulated that petitioner is not entitled to any relief under sec. 6015(b) or (c).

accompanied the filing of the 2000 joint income tax return. Because of mathematical errors on the 2000 joint income tax return, respondent recalculated the total tax liability as $10,765, with total tax due of $2,691. On the 2002 joint income tax return, petitioner and Mr. Bland reported a tax liability of $3,874, withholding credits of $3,271, and a total tax due of $603. Again, no payments accompanied the filing of petitioner's 2002 joint income tax return.

Respondent sent a joint Final Notice of Intent to Levy and Notice of Your Right to a Hearing (CDP notice) to petitioner and Mr. Bland at their last known address by certified mail on November 8, 2002, for the taxable year 2000. The certified mail return receipt which accompanied the CDP notice was signed and returned to respondent on November 18, 2002. Separate CDP notices were sent to petitioner and Mr. Bland at their last known address by certified mail, return receipt requested, on November 11, 2004, for the taxable year 2002. The certified mail return receipts which accompanied the CDP notices were signed and returned to respondent separately on November 24 and 29, 2004.

At the time petitioner signed the 2000 and 2002 joint income tax returns, she and Mr. Bland were having financial difficulties. Although petitioner was aware that taxes were owed to the Internal Revenue Service (IRS) during the taxable years at

issue, she believed that Mr. Bland had remitted payment upon submitting the joint income tax returns.

On October 1, 2006, Mr. Bland passed away.

On or about April 25, 2008, petitioner filed Form 8857, Request for Innocent Spouse Relief, requesting relief with respect to the 2000, 2002, and 2004 tax years. Respondent's Covington, Kentucky, collection office initially denied petitioner's request for innocent spouse relief for the 2000 and 2002 tax years on May 8, 2008, on the basis that her request was not timely. On June 3, 2008, petitioner responded with a Form 12509, Statement of Disagreement, requesting that respondent reconsider the denial at respondent's Appeals Office (Appeals). Her reasons for the continued dispute paralleled those alluded to in her Form 8857:

> I was under the impression that refunds due to us were used to pay for taxes we owed. I did not do any of our tax returns and was not aware of the amounts owed to the IRS. I have always worked and paid my portion of the taxes. * * * It would be a definite hardship for me to maintain a home for myself & teenage daughter without any relief from the taxes owed. I barely kept my home due to my husband's inability to work the last year of his life. Due to my adult son paying my utilities today I have been able to survive the last few years. I was not aware of the tax deficiency we owed.

Petitioner received the requested reconsideration of her claim by Appeals. Appeals' case activity records show that Joan C. Weiss reviewed petitioner's case and spoke with petitioner by telephone on one occasion to explain her rights to her. On

September 18, 2008, respondent sent to petitioner a Final Appeals Determination denying her request for innocent spouse relief for tax years 2000 and 2002. Petitioner on January 9, 2009, filed a timely petition with this Court contesting the adverse determination.

OPINION

In general, married taxpayers may elect to file a joint income tax return. Sec. 6013(a). After making the election, each spouse generally is jointly and severally liable for the entire Federal income tax liability for that year, whether as reported on the joint income tax return or subsequently determined to be due. Sec. 6013(d)(3); see sec. 1.6013-4(b), Income Tax Regs. A spouse or former spouse may petition the Commissioner for relief from joint and several liability in certain circumstances. See sec. 6015(a).

The Commissioner may relieve a spouse or former spouse from joint and several liability if, taking into account all the facts and circumstances, it would be inequitable to hold the taxpayer liable for any unpaid tax or deficiency. Sec. 6015(f)(1).

We begin with the standard of review and the burden of proof. Respondent denied petitioner's request for relief on the ground that petitioner had filed her request more than 2 years after respondent's first collection activity against her commenced for the 2000 and 2002 tax years. Since this fact

violated one of the seven threshold conditions for granting relief, discussed below, respondent urges us to stop our inquiry here and find against petitioner. We decline to do so since we have previously held that the 2-year limitations period of section 1.6015-5(b)(1), Income Tax Regs., is invalid with respect to claims for relief under section 6015(f).[2]

In the alternative, respondent argues that we should review the case for abuse of discretion. However, we have held that the applicable standard of review is de novo. Porter v. Commissioner, 132 T.C. 203, 210 (2009). Petitioner bears the burden of proving that she is entitled to relief under section 6015(f). See Rule 142(a).

The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under section 6015(f). See Rev. Proc. 2003-61, 2003-2 C.B. 296. We

---

[2]This Court has held that the 2-year limitations period prescribed by sec. 1.6015-5(b)(1), Income Tax Regs., is invalid with respect to claims for relief under sec. 6015(f). Hall v. Commissioner, 135 T.C. __, __ (2010) (slip op. at 5); Lantz v. Commissioner, 132 T.C. 131 (2009), revd. 607 F.3d 479 (7th Cir. 2010); cf. Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), affd. on other issues 445 F.2d 985 (10th Cir. 1971). As petitioner's case is appealable to the Court of Appeals for the Ninth Circuit, we follow this Court's precedent articulated in Lantz and Hall.

now analyze the facts under these procedures to determine whether petitioner qualifies for equitable relief.

## I.  Threshold Conditions

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298, sets forth seven threshold conditions that must be satisfied before the Commissioner will consider a request for equitable relief under section 6015(f), as follows:  (i) The requesting spouse filed a joint income tax return for the taxable year for which he or she seeks relief; (ii) relief is not available to the requesting spouse under section 6015(b) or (c); (iii) the requesting spouse applies for relief no later than 2 years after the date of the Commissioner's first collection activity after July 22, 1998, with respect to the requesting spouse;[3] (iv) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (v) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (vi) the requesting spouse did not file or fail to file the return with fraudulent intent; and (vii) the Federal income tax liability from which the requesting spouse seeks relief is attributable to an item of the individual with whom the requesting spouse filed the joint income tax return.  The record establishes that except for the 2-year filing limitation, see

---

[3]See supra note 2.

supra note 2, petitioner satisfies the threshold conditions of Rev. Proc. 2003-61, sec. 4.01.

## II.  Safe Harbor Conditions

If the threshold conditions are met, the Commissioner ordinarily will grant equitable relief under section 6015(f) with respect to an underpayment of income tax reported on a joint Federal income tax return, provided the following three safe harbor conditions are satisfied:  (i) On the date of the request for relief, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse; (ii) on the date the requesting spouse signed the joint income tax return, the requesting spouse did not know, and had no reason to know, that the nonrequesting spouse would not pay the tax liability; and (iii) the requesting spouse will suffer economic hardship if the Commissioner does not grant relief.  Id. sec. 4.02, 2003-2 C.B. at 298.

Respondent contends that petitioner has not established that she meets any of the three safe harbor requirements.  The Court disagrees with respondent and finds that petitioner satisfies the first condition, as at the time petitioner requested relief, Mr. Bland was deceased.  We view that circumstance, with respect to petitioner, as tantamount to her no longer being married.  See Rosenthal v. Commissioner, T.C. Memo. 2004-89.

With regard to the second criterion, petitioner has admitted that she and Mr. Bland were experiencing financial difficulties when they filed the 2000 and 2002 joint income tax returns and that she was aware that there were amounts owed to the IRS. Yet, she claims that she was under the impression Mr. Bland had taken care of the amounts owed, either by remitting payment when he mailed in the joint income tax returns or by applying refunds due towards the tax liabilities for the years at issue. However, petitioner has not established that it was reasonable for her to rely on Mr. Bland to pay the tax due, especially considering that she and Mr. Bland were experiencing financial difficulties. Therefore, the Court finds that this factor has not been met.

Accordingly, because petitioner does not meet all the requirements of the safe harbor, we need not address the third condition in order to conclude that petitioner does not qualify for relief under Rev. Proc. 2003-61, sec. 4.02.

III. Facts and Circumstances Test

A requesting spouse such as petitioner, who satisfies the threshold conditions but fails to satisfy the safe harbor conditions under Rev. Proc. 2003-61, sec. 4.02, is nevertheless eligible for relief under 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for an underpayment. Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298-299, lists various factors to be

considered in deciding whether to grant equitable relief under section 6015(f).  No single factor is determinative, all factors are to considered and weighed appropriately, and the listing of factors is not intended to be exhaustive.  Id.  Our analysis of the relevant factors and circumstances is set forth below.

A.  Marital Status

We have already concluded that petitioner was widowed from Mr. Bland, the nonrequesting spouse, at the time of her request. This factor weighs in favor of relief.

B.  Economic Hardship If Relief Were Denied

The second consideration under Rev. Proc. 2003-61, sec. 4.03, is that the requesting spouse will suffer economic hardship if relief is not granted.  Economic hardship for these purposes is defined as the inability to pay reasonable basic living expenses if the requesting spouse is held liable for the tax owed.  See sec. 301.6343-1(b)(4), Proced. & Admin. Regs.  The ability to pay reasonable basic living expenses is determined by considering among other things the following nonexclusive factors:  The taxpayer's age; employment status; ability to earn; number of dependents; expenses for food, clothing, housing, medical, and transportation; and any extraordinary circumstances. Id.

Respondent computed petitioner's gross monthly income and living expenses and concluded that her income exceeded her

expenses by $195 per month and that holding her accountable for the tax owed would not result in economic hardship. However, petitioner testified at trial that she now has a car payment to make that she did not have at the time and lives "on a strict, strict budget in order to survive month to month" and that she does not "have the means to pay" the tax liabilities owed.

The Court appreciates that petitioner's financial circumstances are difficult, but she has not presented any evidence to dispute respondent's calculations. She testified at trial that her car payment causes her monthly expenses to be greater than what she claimed on her Form 8857 and that she incurs excessive medical expenses, but she provided no evidence to substantiate her testimony. She candidly verified the accuracy of the expenses listed on her Form 8857 and admitted that she receives an additional $63 of monthly income. On the record before us, petitioner's actual expenses are not enough for us to conclude that she would be unable to pay her basic living expenses if relief were not granted. Accordingly, this factor weighs against relief.

C. Knowledge or Reason To Know That the Nonrequesting Spouse Would Not Pay the Income Tax Liability

As noted supra, petitioner was aware that she and Mr. Bland were facing financial difficulties. Accordingly, we find that she did have reason to know that Mr. Bland would not pay the 2000

and 2002 income tax liabilities and therefore find this factor weighs against relief.

D. <u>Nonrequesting Spouse's Legal Obligation To Pay the Outstanding Liability</u>

Because petitioner and Mr. Bland remained married until he died, this factor is neutral.

E. <u>Significant Economic Benefit</u>

A fifth factor is whether the requesting party received a significant economic benefit from the unpaid income tax liability. Appeals in its workpaper determined that petitioner did not receive a significant economic benefit. This factor weighs in favor of relief.

F. <u>Subsequent Compliance With Income Tax Laws</u>

A sixth consideration is whether the requesting spouse made a good faith effort to comply with Federal income tax laws in subsequent years. Appeals determined that petitioner failed to report self-employment income on the 2004 joint income tax return and that on the joint return for 2005, she and Mr. Bland reported a balance due, but made no payments. Petitioner provided no evidence to dispute respondent's determinations. This factor weighs against relief.

G. <u>Abuse</u>

A seventh factor is abuse of the requesting spouse. Abuse by the nonrequesting spouse favors relief. The record does not

indicate petitioner suffered abuse from Mr. Bland.  This factor
is neutral.

H.  Poor Health When Signing the Return or Requesting Relief

The final consideration is whether the requesting spouse was
in poor health when signing the return or requesting relief.  The
record does not indicate that petitioner was in poor health when
she signed the 2000 and 2002 joint income tax returns, and
Appeals determined that petitioner was not in poor physical or
mental health when she signed the returns or at the time she
requested relief.  However, petitioner testified at trial that
she is "diabetic", takes "seven medications a day", and sees "a
doctor every two weeks".  Yet petitioner provided no evidence to
substantiate or corroborate her testimony.  On the record
available, the Court cannot conclude that petitioner's poor
health weighs in favor of granting her relief.  Therefore, this
factor is neutral.

IV.  Conclusion About Equitable Relief

As indicated by the foregoing analysis, three factors are
neutral.  Two of the factors--marital status and significant
benefit--favor relief.  Three of the factors--economic
hardship, knowledge or reason to know, and compliance with
Federal income tax laws--counsel against relief.  After
weighing the testimony and evidence, we conclude that
petitioner is not entitled to equitable relief.  In reaching

this conclusion, we take into account that while her standard of living may be affected, petitioner will not suffer economic hardship if required to pay the outstanding tax liabilities. Accordingly, the Court finds that petitioner is not entitled to relief under section 6015(f).

The Court has considered all other arguments made by the parties and, to the extent not specifically addressed herein, has concluded that they are without merit or are moot.  To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.